IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. JORDAN , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:09cv610-WHA |
| | ) | |
| ECOLAB, INC., | ) | (wo) |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #16), filed by the

Defendant, Ecolab, Inc., a Motion to Strike filed by Michael Jordan (Doc. #20), and a Motion to

Strike filed by Defendant Ecolab, Inc. (Doc. #26).

The Plaintiff, Michael J. Jordan ("Jordan"), originally filed a Complaint in this case on

June 29, 2009.  He brings claims against his former employer, Ecolab, Inc., for race

discrimination (Count I); and retaliation (Count II).  Both claims are brought pursuant to Title

VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.

The Defendant, Ecolab, Inc., has moved for summary judgment as to all claims.

For the reasons to be discussed, the Motion for Summary Judgment is due to be

GRANTED in part and DENIED in part and the Motions to Strike are due to be GRANTED in

part and DENIED in part.

**II.  SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no

2

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. A1 Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000)(*en banc*).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Jordan, is an African American who was employed by the Defendant, Ecolab. He was employed beginning February 11, 1999, as a Service Specialist. Jordan's supervisor from 2007-2008, prior to his termination on April 21, 2008, was Scott Fireck.

As a Service Specialist, Jordan's job duties entailed performing pest control services at various locations under contract with Ecolab. He was promoted to Senior Service Specialist in February, 2002. Jordan received favorable performance reviews. Jordan states that he was a quota breaker, demonstrating good work performance with Ecolab, every year beginning in 2000 through 2007.

Jordan worked day and night accounts until approximately June 13, 2007, when he was assigned only to night accounts by the District Manager, Scott Fireck ("Fireck"). He contends that the reassignment of accounts was not in accordance with company policy and that his day accounts were given to newly-hired white Service Specialists. Jordan states that he was not given a choice as to whether he would be assigned day or night accounts, and that white Service Specialists worked both night and day accounts. Jordan identifies Scott Burkey

("Burkey") and Phillip Drew Martin ("Martin") as white Service Specialists who worked day and night accounts.

In August, 2007, Jordan took Family and Medical Leave, and at the end of that leave, took a week of vacation, at the recommendation of his doctor. Jordan contends that the normal procedure for routing calls while a Service Specialist is on leave was not followed during his leave and several service calls were not handled for him in his absence.

In September, 2007, Jordan filed a complaint with the Equal Employment Opportunity Commission, alleging race discrimination. He contends that subsequent to his complaint, accounts continued to be removed from him and given to white Service Specialists. Accounts are assigned based on various factors, including whether the account is a day or night account and where the accounts are located geographically in relationship to the Service Specialist's home. Because Service Specialists do not have an office, they are based out of their home. Jordan contends that new accounts which were close to his home were assigned to white Service Specialists.

Jordan was aware that some of the customers whose accounts he serviced voiced complaints about his service and requested that he be taken off of their accounts. In December 2006, Fireck had drafted a warning memorandum to Jordan, which Jordan received, describing service issues at a Cracker Barrel and a Shoney's restaurant, and telling him that his performance was in need of improvement. On January 31, 2007, Ecolab Associate Regional Manager Rodney Beloso ("Beloso") delivered a memorandum to Jordan which stated that the Cracker Barrel District Manager asked that Jordan not be allowed to service Cracker Barrel

stores.  The Beloso memorandum warned Jordan that if his performance did not improve, he could be terminated.

In February, 2008, Jordan received a "needs improvement" rating on his Performance Appraisal.

Beloso states in his Declaration that in April 2008, he was informed by Ecolab's Human Resources Department that Jordan's employment should be terminated.  Jordan was terminated on April 21, 2008.  Fireck, Beloso, and Tim Burgett, the Ecolab new District Manager, were accompanied by a police officer to Jordan's home to inform him of his termination.  The police officer was requested by the Ecolab management officials because of a previous incident, which Jordan characterizes as horseplay, involving another Ecolab employee and a knife.

Jordan was replaced by a white employee, Jacob Snowden.

## IV. DISCUSSION

As stated earlier, Jordan has brought claims of discrimination and retaliation, as to which Ecolab has moved for summary judgment.

### A   Discrimination on the Basis of Race

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race under Title VII and § 1981 by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the plaintiff must establish a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to

articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000).

Although his Complaint does not set out as separate claims the particular employment actions which Jordan contends were discriminatory on the basis of his race, it is apparent that he is challenging his termination, and he also appears to be challenging the assignment to only night accounts and the removal/denial of various accounts as being discriminatory. The court will address each separately.

### 1. Termination

A plaintiff's prima facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. *Zeigler v. Alabama Dept. of Human Resources*, No. 2:09cv284-WHA, 2010

6

WL 1740834 at *6  (M.D.Ala. April 29,  2010) (citing *Nix v. WLCY Radio/Rahall*

*Communications*, 738 F.2d 1181, 1185 (11th Cir.1984);  *Holifield v. Reno*, 115 F.3d 1555, 1562

(11th Cir.1997)).

 Ecolab states that Jordan cannot show that similarly-situated persons outside of his group

were treated differently, but, as stated above, a plaintiff can establish a prima facie case if he was

replaced by someone outside of his protected group.  *Id.*   It is apparently undisputed that Jordan

was replaced by a white Service Specialist, Jacob Snowden.

 Ecolab also states in a footnote that Jordan cannot demonstrate that he was qualified for

his position because of his demonstrated inability to perform his job duties.   It has been long-

established in the Eleventh Circuit, however, that where a plaintiff challenges discharge from a

previously-held position, the "prong requiring proof of qualification is removed," because when

a plaintiff has held a position for a significant period of time, "qualification for that position

sufficient to satisfy the test of a prima face case can be inferred."  *Rosenfield v. Wellington*

*Leisure Products, Inc.*, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987).  Job performance becomes

relevant instead in the context of the discussion of pretext of job performance as the reason for

termination.  *Id.*

 Jordan, therefore, has established a prima facie case of discrimination on the basis of race

in his termination.  In response, Ecolab has articulated poor work performance as a non-

discriminatory reason for Jordan's termination.  Ecolab replies that it is undisputed that Jordan

had positive assessments prior to 2007, but that beginning in 2007, he had performance issues

which did not improve.   Ecolab points to performance improvement plans in January and

September of 2007.   Ecolab also presents Jordan's deposition testimony that he was aware that

customers, including Wal-Mart, Captain D's, and Cracker Barrel, requested that he be removed as the Service Specialist on their accounts due to his service.  Jordan Dep. at 183: 4-9.

Jordan argues that he has established pretext because he performed his job well.  He points out that he earned company awards through 2007, and on his last work appraisal in 2007 was told that he was performing in a satisfactory manner, and received a bonus two months prior to his termination.  Jordan disputes in his affidavit that he was put on performance improvement plans, but does not dispute that customers asked that he be removed from their accounts.

Ecolab has moved to strike portions of Jordan's affidavit as being inconsistent with his deposition, citing *Van T. Junkins & Assoc. V. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984). In particular, Ecolab moves to strike Jordan's statement that "[c]ontrary to Scott Fireck's affidavit, I have never been placed on a Performance Improvement Plan."  Jordan Aff. at ¶ 26.

In *Van T. Junkins*, the Eleventh Circuit held that when a party has given "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Id.* at 657.  Statements that do not meet that standard go only to credibility, and only statements inherently inconsistent with deposition testimony should not be considered.  *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

Jordan contends that the statement in his affidavit ought not be stricken because he consistently denied having been placed on a performance improvement plan in his deposition. Both parties cite to Jordan's deposition in support of their respective positions.  In his deposition, Jordan testified that he was not aware of various performance improvement plans shown to him

by the attorney questioning him.  He did, however, respond "yes," when asked whether he recalled being placed on a performance improvement plan at any point during his employment with Ecolab.  Jordan Dep. at page 181: 12-15.   He then stated he does not "recall when, but I think they wrote me up for the Cracker Barrel situation."  Id. at 17-19.  The only explanation given in his brief for the discrepancy between the affidavit and deposition is that the statement in the deposition came after six hours of questioning and after having been shown a performance improvement plan.

The court agrees that the statement "I have never been placed on a Performance Improvement Plan," inherently contradicts without explanation Jordan's agreement in his deposition with the statement that he recalled having been placed on a performance improvement plan at some point during his employment at Ecolab.  The court, therefore, considers Jordan's admission that he had been placed on performance improvement plan at some point, although he does not recall when, and does not consider his statement that he had never been placed on a performance improvement plan to create a question of fact on that issue.[1]

In further support of his argument that Ecolab's articulated reason for his termination is pretextual, Jordan states that he received a performance appraisal on January 26, 2008 that showed performance similar to that of the white Service Specialist, Burkey, but only Jordan was terminated for allegedly poor performance.

---

[1]  Ecolab has also moved to strike portions of Jordan's affidavit as being beyond his personal knowledge, particularly statements regarding certifications and routes.  The court has only considered statements that are within Jordan's personal knowledge. Ecolab has also challenged other statements which the court has not considered.  The Motion to Strike will be denied as moot as to those statements.

The court has fully reviewed the two performance appraisals, including the statement in Burkey's appraisal that Burkey needs to put forth better effort on collecting monies owed. Plaintiff's Exhibit 18.  In every section where the two employees were assessed ratings, Burkey met or exceeded Jordan's rating, except that Burkey's overall performance rating was indicated as "New in Position," whereas Jordan received a "Needs Improvement."  Id.  For example, Burkey was given "meets expectations," "exceeds expectations," or "excels" on the Performance Appraisal Supplemental Worksheet, and no "needs improvement" ratings, whereas Jordan received only three "meets expectations" ratings, and received seven "needs improvement" ratings.  Id.  The court cannot conclude, therefore, that two performance appraisals Jordan points to create a question of fact sufficient to establish pretext.

Jordan has also provided the court with an exhibit that contains a recording of calls to a call center which logs calls, including complaints, by customers of Burkey and Martin.  Jordan does not, however, provide evidence of any record of calls made with respect to his customers, so the court is unable to draw a comparison.  Both Fireck and Beloso have stated that they are unaware of any other Service Specialists with as many service complaints as Jordan.  Beloso Decl. at ¶22 and Fireck Decl. at ¶ 20.  Furthermore, there is no evidence before the court that any white Service Specialists were retained after customers had requested that they be removed from accounts.

Jordan states that the reasons given for his termination "contradict the usual procedures followed for years by employees . . . .  Doc. # 22 at page 39.  It is unclear to the court what procedures Jordan refers to with this statement.   While he has denied knowledge of some aspects of Ecolab's evidence, such as performance improvement plans which he states he never

saw, he admits in his deposition that customer complaints were made about him and that he was

placed on a performance improvement plan at some point.  As noted above, Jordan stated that he

was aware that customers, including Wal-Mart, Captain D's,[2] and Cracker Barrel, requested that

he be removed from their accounts because of his service.  Jordan Dep. at page 183: 4-9.   The

mere fact that Jordan had performed well in the past, and had received recognition for that

performance, is not sufficient to call into question the articulation of job performance as a reason

for termination, in light of the undisputed evidence that at the time of his termination, Jordan had

been placed on a performance improvement plan at some point for work performance issues, and

had received customer complaints requesting that he be removed from accounts.  Summary

judgment is, therefore, due to be GRANTED as to this claim.

### 2.  Assignment to Night Accounts

It is not clear from Jordan's response to the Motion for Summary Judgment whether he

seeks to rely on evidence of different treatment of white Service Specialists merely to

substantiate his termination claim, or whether he contends that different treatment is a separate

---

[2] Scott Fireck's Declaration regarding the Captain D's account is the subject of a Motion to Strike filed by the Plaintiff.  The Plaintiff seeks to strike Fireck's statement that the District Manager for Captain D's told him that he had heard that Jordan had called Captain D's unsanitary and that the District Manager did not want Jordan to service Captain D's accounts.

Jordan states that the paragraph contains double hearsay.  Ecolab responds that the statement is not offered for the truth of the fact that Jordan had made any statements, but that the District Manager had voiced a complaint which was the basis of Fireck's decision to re-assign the account.

The court agrees that Jordan's statements are not hearsay because not offered for the truth of the matter.  The District Manager's statement to Fireck, however, is offered for the truth of the matter that complaints were made.  Therefore, the court will not consider this evidence, and the Motion to Strike is due to be GRANTED.  The court has, however, considered Jordan's deposition evidence that he was aware that the Captain D's manager had voiced a complaint about him and asked that he be removed from the account.

act of discrimination.  Therefore, the court will address the evidence of day and night account assignments as if Jordan has presented it as a separate claim.

Ecolab states that Jordan cannot demonstrate that his reassignment from day and night shifts to solely night accounts was an adverse employment action.  Ecolab states that Jordan worked primarily night shifts and that Jordan himself stated in his testimony that he regularly received a bonus.  Although Ecolab states that Jordan has not claimed that he lost income as a result of the reallocation of accounts, Jordan has argued that day route provide better opportunity for sales because there are managers available to discuss products and services.[3]  Jordan states in his affidavit that he suffered "a great financial loss because of large accounts being taken away . . . ."  Jordan Aff. at ¶ 12.  The court concludes, therefore, that at least a question of fact exists as to whether this was an adverse employment action because Jordan lost income through the reallocation of accounts.

Ecolab's articulated, non-discriminatory reason for Jordan's assignment to night accounts is that Jordan's shift assignment was changed due to safety reasons.  Fireck Decl. at ¶ 5.  Fireck states that Service Specialists were working too many hours and working day and night shifts, with little time off, which presented a safety issue.  Id. at ¶ 4.  Ecolab further states in its brief that white Service Specialists were not allowed to work routes with a large number of night and day accounts.

Jordan states in his Affidavit that he was moved to a permanent night shift while Martin and Burkey, newly-hired white Service Specialists, were allowed to work day and night

---

[3] Although Jordan's brief cites to his affidavit for the proposition that day routes provide added opportunity for sales, no such statement is contained in the affidavit.

12

accounts.  Jordan Aff. at ¶ 6.[4]   He further stated in his Affidavit that his day accounts were given to Martin and Burkey.  Id.  Jordan finally states that even though he was told he was working too many hours, he was assigned other low volume accounts.  Id. at ¶ 8.

Fireck's Declaration does not address whether Martin and Burkey had both day and night accounts.  It appears that Ecolab's position is that Jordan had primarily night accounts at the time of the reallocation, so was switched to night accounts exclusively, and that the new white Service Specialists who were hired were helping Service Specialists who had both types of accounts, so they had both night and day accounts.  The court simply cannot determine, however, based on the state of the evidence, what the extent of Martin and Burkey's assignment to both day and night accounts was.   It appears to be a jury question as to the veracity of Fireck's explanation that it was safer for Jordan to work only night accounts, but Martin and Burkey could work night and day accounts.  Therefore, the court concludes that the question of fact as to the truthfulness of Fireck's explanation that Service Specialists were assigned to either day or night accounts for safety reasons precludes summary judgment on this claim.

### 3. Removal of Work Accounts

As stated above, Jordan states in his Affidavit that he suffered a great financial loss because large accounts were taken from him and he was not offered similar large accounts to replace them.  Jordan Aff. at ¶ 12.  He identifies the following accounts as being accounts removed from him:  the Postal Service, Captain D's, Wal-Mart, Burger King, Wendy's in Clanton, Motel 6 in Montgomery, Ruby Tuesday, and two Burger Kings in Alex City, Alabama. He also states that a Coca-Cola plant account, a Renaissance Hotel account, and two Veteran's

---

[4] This paragraph of the Affidavit is not subject to the pending Motion to Strike.

Administration ("VA") Hospital accounts were given to white Service Specialists, rather than to him.

At the outset, the court notes that the scope of this claim is difficult to discern. Some of the accounts were removed because they were day accounts, and, therefore, would fall within the reassignment to solely night accounts, discussed above. Other accounts for which Jordan has provided evidence were not removed at all, but instead were new accounts he was never assigned. Finally, there appear to be at least some accounts which were reassigned from Jordan to other Service Specialists, but the reason for the reassignment was not that they were day accounts, but that customers requested that Jordan no longer be assigned the accounts. The court, will, therefore, apply the grounds for summary judgment as addressed to those categories of accounts.

The court first notes that Jordan himself states that the Ruby Tuesday and Wendy's accounts were lost due to pricing issues, *see* Jordan Aff. at page 4, so the court cannot conclude that the loss of these accounts was an adverse employment action by Ecolab.

The Postal Service account apparently was an account reassigned because it was a day account and so would fall within the reassignment of accounts claim discussed above.

The Affidavit provided by Jordan does not identify to whom accounts at Captain D's, Burger King, Motel 6, or Cove Blue Creek were given. The court cannot conclude, therefore, that Jordan has established a separate prima facie case of discrimination as to those accounts. If the evidence should establish that those accounts were day accounts which were assigned to white Service Specialists on that basis, however, then they would fall within the night accounts assignment claim discussed above.

14

The new accounts which Jordan claimed should have been assigned to him, but were not, are VA accounts in Montgomery and in Tuskegee, a Renaissance Hotel, and a Coca Cola account.  Jordan argues that the Service Specialist given the VA account was not state certified and that Jordan lived in closer proximity to the Coca Cola and VA accounts.  Jordan further states in his affidavit that accounts were assigned based on how close they were to where a specialist lived.  Jordan Aff. at ¶ 13.  The only evidence Jordan has pointed to as to proximity, however, is that he lived in Montgomery and Burkey lived in Prattville, and the accounts in question were in Montgomery and Tuskegee.

Although Jordan cites to his own affidavit and to Plaintiff's Exhibit 17 to support the proposition that the Renaissance Hotel account was assigned to a white Service Specialist, neither his affidavit nor Exhibit 17 identifies to whom the Renaissance Hotel account was assigned.  The court cannot conclude, therefore, that a separate claim has been established based on the assignment of this account.

With respect to the VA accounts and the Coca Cola account, Jordan has stated in his affidavit that they were assigned to Burkey.  Beloso stated in his deposition that accounts were assigned based on various factors, including whether they fell geographically within a person's area of responsibility, and whether they were day or night accounts.  Beloso Dep. at pages 33-34.  Specifically with respect to the Coca Cola account, Fireck stated in his deposition that Burkey was assigned that account because it was a day account.  Fireck Dep. at page 14.[5]  Therefore, the

---

[5]  The court notes that Beloso said that Burkey's assignment was also based on his being assigned primarily food and beverage customers.  Beloso Dep. at page 35:22-36: 5.  Fireck does not mention this consideration.

assignment of new accounts as alleged by Jordan appears to fall within the scope of his claim that he was confined to night accounts on the basis of his race, as discussed above.

It appears, therefore, that the only account removal Jordan brings as a separate claim of discrimination, and as to which he has presented evidence to demonstrate that it was assigned to a white Service Specialist, and which was not reassigned merely because it was a day account, were Wal-Mart account.

Ecolab presents evidence that the Wal-Mart accounts, among others, complained about Jordan's work performance and asked that he be removed from the accounts. Ecolab states that Jordan's removal from these accounts was not an adverse employment action, so that Jordan has failed to establish a prima facie case of discrimination in the assignment of work accounts. Ecolab further articulates as a legitimate, nondiscriminatory reason for the reassignment that Jordan was removed from the account at the customer's request.

Jordan does not dispute that there were complaints. In fact, as noted above, Jordan stated in his deposition that he was aware that customers, including Wal-Mart, Captain D's, and Cracker Barrel, requested that he be removed from their accounts because of his service. Jordan Dep. at page 183: 4-9. He further does not present evidence that white Service Specialists were allowed to retain accounts in the face of requests by the customer that they be removed. The court concludes, therefore, that Jordan has failed to create an issue of fact sufficient to establish pretext as to this separate removal of accounts claim. Summary judgment is due to be GRANTED as to this claim.

B.  Retaliation

16

The retaliation claim in Count Two of the Complaint incorporates by reference all of the preceding paragraphs of the Complaint.  Jordan also states in his brief that after filing his EEOC claim in September 2007, he continued to lose day accounts and was ultimately terminated. Therefore, although it not clear that Jordan contends that his termination, night accounts assignment, and the removal of accounts were in retaliation for protected activity, the court will address all three employment actions as claims asserted by Jordan.

### 1.  Termination

To establish a prima face case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the two events.  *Davis v. Coca Cola Bottling Co., Inc.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008).

Ecolab does not dispute that Jordan's September 19, 2007 EEOC charge is a protected activity, and that his discharge is an adverse employment action.  Ecolab argues, however, that there is no causation between the September 2007 charge and his April 2008 termination, because more than seven months elapsed between events.  Timing alone can satisfy causation for purposes of a prima facie case, but not if the period between events is too great.  *See Clark Co. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001).  The Eleventh Circuit has concluded that seven months is too long a period to establish causation, without other evidence of causation. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 951 (11th Cir. 2000).

Jordan argues that he has established a prima facie case of retaliation because after he filed his EEOC complaint, "challenging accounts" were unjustly relied upon by management to effect his termination.  Jordan states that Service Specialists were not held personally responsible

17

for "challenging accounts," because those were accounts for which the customers bore some responsibility for pest control problems because of their own sanitation issues.  In other words, Jordan appears to argue that Ecolab relied on his performance on certain accounts to justify his termination, and the court should look to the timing of that action by management, rather than the timing of the actual termination.  To support his argument that management relied on his performance on such accounts, he points to evidence regarding the Cracker Barrel account.  He states that he had attempted as early as 2006 to notify Ecolab of sanitation issues with that account, but he did not receive appropriate responses from management.

Ecolab responds that sanitation issues in 2006 could not be causally connected to a complaint of discrimination in September 2007.   Ecolab also states that Jordan's performance issues, for which he was terminated, occurred in 2006, 2007, and 2008, and were not limited to the Cracker Barrel account.

Even accepting Jordan's argument that the court should consider management's response to the Cracker Barrel account, rather than merely the ultimate act of termination, the evidence before the court regarding the Cracker Barrel account is a memorandum from Fireck referencing Jordan's performance issues, dated December 29, 2006, and a memorandum from Beloso to Jordan in which he tells Jordan he may be subject to termination if his performance does not improve, dated January 31, 2007.   The three and four month periods, respectively, between the protected activity and management's response to Jordan's performance issues are too long to establish causation, without other evidence.  *See, e.g., Higdon v. Jackson,* 393 F.3d 1211, 1221 (11th Cir. 2004) (three month period between protected activity and adverse action is too long to establish causation).

Accordingly, the court cannot conclude that a termination seven months after the protected activity, or even a letter threatening termination four months after the protected activity, or a letter counseling about performance issues three months after the protected activity, without more, sufficiently satisfies the causal connection required for a prima facie case. Summary judgment is, therefore, due to be GRANTED as to the retaliation claim based on Jordan's termination.

### 2.  Assignment to Night Accounts

As stated above, Ecolab has argued that assignment to night accounts was not an adverse employment action, but the court has concluded that there is a question of fact as to whether the night assignment deprived Jordan of some income.  Jordan cannot, however, establish causation with respect to a retaliation claim based on the assignment to night accounts.  Jordan does not dispute that he was assigned to only night accounts beginning approximately June 13, 2007. Obviously, an employment action taken before the protected activity cannot be causally connected to that protected activity.  *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006). Summary judgment is, therefore, due to be GRANTED as to this claim.

### 3.  Removal of Accounts

Jordan argues that once he made a complaint of race discrimination, he continued to lose accounts.  Again, the scope of Jordan's claim concerning loss of accounts is difficult to discern. Fireck stated in his Declaration that he reassigned Jordan's day accounts at the time that he made the decision to assign him only to night accounts.  Fireck Decl. at ¶ 5.  Therefore, any claim of

19

reassignments of those accounts also occurred before the protected activity and there is no causation. *See Drago*, 453 F.3d at 1308.

If Jordan intends to assert a retaliation claim based on the failure of Ecolab to assign him the Coca Cola and VA accounts, he has not pointed the court to evidence of when those assignments occurred. Even assuming that the assignments themselves were made after Jordan's protected activity, however, Jordan still cannot establish causation based on timing alone. Jordan has not refuted that the assignment of those accounts was made pursuant to Fireck's decision to assign Jordan only to night accounts. It is well-established in the Eleventh Circuit that an employment action contemplated before a protected activity occurs is not in retaliation for that protected activity. *See Drago*, 453 F.3d at 2308. Therefore, accounts assigned pursuant to a decision made before Jordan's protected activity are not causally-connected to his protected activity.

The Wal-Mart accounts do not fall within this analysis, however, because it appears that they were not day accounts and were not reassigned on that basis. If that reassignment occurred after the protected activity, it is possible that Jordan has established a prima facie case of retaliation. As discussed above, however, Jordan has failed to establish that the explanation given for the reassignment, that customers requested Jordan's removal, is unworthy of credence, or that white Service Specialists were treated differently when there were customer requests that the Service Specialists be removed. There being no other basis for concluding that the reason given is pretextual, summary judgment is also due to be GRANTED as to this retaliation claim.

## V. CONCLUSION

For the foregoing reasons it is hereby ORDERED as follows:

20

    1.  The Plaintiff's Motion to Strike Hearsay Evidence (Doc. #20) is GRANTED as to the hearsay statement in Fireck's affidavit regarding a Captain D's complaint, but is DENIED as to challenged statements not offered for the truth of the matter asserted.

    2.  The Defendant's Motion to Strike Portions of the Affidavit of Michael J. Jordan (Doc. #26) is GRANTED as to Jordan's statement that he was not placed on a performance improvement plan, and is DENIED as moot in all other respects.

    3.  The Motion for Summary Judgment is GRANTED and judgment is entered as to Ecolab, Inc. and against Michael J. Jordan as to his discrimination and retaliation claims based on his termination and account removal, and as to his retaliation claim based on assignment to night accounts.

    4.  The Motion for Summary Judgment is DENIED as to Jordan's discrimination claim based on assignment to night accounts.  The case will proceed to trial solely on this claim.


Done this 16th day of July, 2010.

                    /s/ W. Harold Albritton
                    W.  HAROLD ALBRITTON
                    SENIOR UNITED STATES DISTRICT JUDGE